IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

DONALD W. CARPENTER

        Plaintiff,

v.                                                             Civil Action No. 5:05-CV-70

JO ANNE B. BARNHART,
COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.

## REPORT AND RECOMMENDATION
## SOCIAL SECURITY

### I. Introduction

A.    Background

Plaintiff, Donald W. Carpenter, (Claimant), filed his Complaint on May 16, 2005, seeking Judicial review pursuant to 42 U.S.C. § 405(g) of an adverse decision by Defendant, Commissioner of Social Security, (Commissioner).[1] Commissioner filed her Answer on July 18, 2005.[2] Claimant filed his Motion for Summary Judgment and Brief in Support on July 26, 2005.[3] Commissioner filed her Motion for Summary Judgment and Brief in Support on October 24, 2005.[4]

B.    The Pleadings

        1.    Claimant's Motion for Summary Judgment and Brief in Support.

---

[1] Docket No. 1.

[2] Docket No. 3.

[3] Docket Nos. 6 and 7.

[4] Docket No. 9.

2. Commissioner's Motion for Summary Judgment and Brief in Support.

C. Recommendation

I recommend that Claimant's Motion for Summary Judgment be DENIED and that the Commissioner's Motion for Summary Judgment be GRANTED because the ALJ was substantially justified in his decision. Specifically, the ALJ (1) conducted a proper credibility analysis; and (2) was not required to discuss every piece of evidence.

## II. Facts

A. Procedural History

On May 16, 2001, Claimant filed for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) payments alleging disability since September 19, 2000. The application was denied initially and on reconsideration. Claimant filed no related appeal. On July 21, 2003, Claimant made a new protective filing for SSI. On August 8, 2003, Claimant reapplied for DIB. These concurrent claims were denied at both initial and reconsideration levels. A hearing was held on November 8, 2004 before an ALJ. The ALJ's decision, December 1, 2004, denied the claim finding Claimant not disabled within the meaning of the Act. The Appeals Council denied Claimant's request for review of the ALJ's decision on March 16, 2005. This action was filed and proceeded as set forth above.

B. Personal History

Claimant was 42 years old on the date of the November 8, 2004 hearing before the ALJ. Claimant has a high school education and past relevant work experience as a tree trimmer and truck driver.

C. Medical History

The following medical history is relevant to the time period during which the ALJ concluded that Claimant was not under a disability: September 19, 2000- December 1, 2004.

**University Health Associates, 5/9/03, Tr. 103-105**
Impression: The diagnosis is chronic low back pain. I do believe this claimant has reached a maximal degree of medical improvement. He was non-compliant with the Oasis Rehabilitation Program and there is no further treatment that can be offered this gentleman. He is not a surgical candidate.

**Dr. Manchin, 7/31/03, Tr. 106-160**
Lumbosacral disc disease.

**Fairmont general Hospital, MRI report, Lumbar spine, 8/28/03, Tr. 162**
Impression: Moderate diffuse disc bulge L3-4 with mild to moderate neuro-foraminal encroachment bilaterally.

**Manchin Clinic, X-ray, Lumbar spine, Tr. 164**
Impression:  1. Bilateral spondylolysis at L5.
2. Mild degenerative change.
3. Less than grade 1 spondylolisthesis at L5-S1.

**Fairmont general Hospital, MRI report, Lumbar spine, 8/28/03, Tr. 165**
Impression: Degenerative disc disease changes seen at the L3-4 level.

**Physical Residual Functional Capacity Assessment, 8/28/03, Tr. 167-174**
Exertional limitations: Occasionally 50 lbs., frequently 25 lbs., sit 6 of 8 hours, unlimited push and pull.

Postural limitations: None established.

Manipulative limitations: None established.

Visual limitations: None established.

Communicative limitations: None established.

Environmental limitations: None established.

**Physical Residual Functional Capacity Assessment, 11/5/03, Tr. 176-183**
Exertional limitations: Occasionally 50 lbs., frequently 25 lbs., sit 6 of 8 hours, unlimited push and pull.

Postural limitations:

Balancing, stooping, kneeling, crouching anc crawling–frequently.

Manipulative limitations: None established.

Visual limitations: None established.

Communicative limitations: None established.

Environmental limitations:
Extreme cold–avoid concentrated exposure.
Extreme heat, wetness, humidity, noise vibration, fumes, hazards–unlimited.

D.     Testimonial Evidence

### 1. Claimant

Testimony was taken at the hearing from Claimant, who testified as follows (Tr. 197-222):

    Q    Why don't you drive?

    A    Well, just it hurts my back too bad.  She takes me everywhere I go because I'm usually squirming around in the seat from side to side.

            *          *          *

EXAMINATION OF CLAIMANT BY REPRESENTATIVE:

    Q    Where's your pain located?

    A    My lower back.

    Q    What does it feel like?

    A    Just an aching, throbbing.

    Q    If I put a pain meter on you that goes from zero which is nothing to ten which is the worst pain you can imagine where is that meter going to be normally?

    A    Normally?

Q	Normally.

A	Probably a seven.

Q	Are there periods of time when it gets worse?

A	Yes.

Q	How often does that happen?

A	About every morning, every evening.

Q	And when it gets worse how long does it last?

A	Well, probably for the first maybe first hour, hour and a half when I'm up and it seems like late in the evening probably - - I don't know, about - - I don't know, maybe an hour.

Q	Does the pain move around anywhere?

A	Well, it's I my legs. It goes down my legs.

*	*	*

Q	Do you have any problems kind of taking care of your personal needs, you know, washing or grooming or bathing?

A	Yes.

Q	You do. You have problems?

A	Yes.

Q	What kind of problems?

A	Well, that's - - I was hoping she would tell you but nothing. I can't - - she usually helps me in the bathtub and helps me out. I cannot bend over and dry my feet. She'll put my shoes and my socks on me.

Q	Um-hum.

A      Anything to do with bending I can't do, and I have a hard - - like I say when I get out of the tub I'm on my knees leaning on the tub getting out and she's there usually pulling on me.

2. Vocational Expert

Testimony was taken at the hearing from Vocational Expert, who testified as follows (Tr. 222-225):

EXAMINATION OF VOCATIONAL EXPERT BY ADMINISTRATIVE LAW JUDGE:

*      *      *

A      Okay. The work as the truck driver is recognized in the DOT under dump truck driver and that's 902.683-010, medium exertional, specific vocational preparation a 2 therefore considered unskilled.

Q      Okay. Thank you. I'm going to ask you a few hypotheticals. If you assume an individual the Claimant's age, education and vocational experience. Assume first that the individual can perform light work with a sit, stand option, only occasional posturals, no climbing and no squatting. Would there be work in the national economy or one of the regional economies that such an individual could do?

A      Falling within the hypothetical that was given work as a cleaner polisher. There are 95,000 national. For the region there's 800, and for the region what I'm utilizing is State of West Virginia with - - along with the recognized metropolitan statistical areas. Work as a plumbing hardware assembler. There are 98,000 national, regional 400. Work as a folder, 75,000 for the national, 1,000 for the regional, and that's a sampling, sir.

6

Q       Okay. Thank you. What about with the same hypothetical but with - - if the individual was limited to sedentary work but retaining the sit, stand option?

A       Okay. The following would be within this hypothetical, type copy examiner, 70,000 national, regional 300. Plastic design applier, 60,000 national, regional 300. Laminator, I, 75,000 national, 400 regional, and that's a sampling, sir.

Q       Okay. Thank you. Now, if the individual after sitting or standing for an hour was required to switch positions so that he was laying down for ten minutes and would have to do that each hour would that change your answer?

A       Yes, sir.

Q       And what would the result be?

A       No employer's going to find him a comfortable place to lie down for that frequency.

Q       Okay. And that's true with the sedentary or light level - -

A       Yes, sir. It wouldn't matter.

Q       - - whichever - - whether that was added to any. And if instead of the requirement that the individual lay down because of the pain of the individual's impairments the individual could not stay on task for one-third - - more than one-third of the workday would that affect the - - your answer?

A       Yes. It would, sir.

Q       What would be the result?

A       Would not be able to be effective in any full-time competitive employment.

Q       Okay. So there'd be no jobs under those circumstances.

A       That's correct.

E.      Lifestyle Evidence

The following evidence concerning Claimant's lifestyle was obtained at the hearing and through medical records. The information is included in the report to demonstrate how Claimant's alleged impairments affect his daily life.

- Non compliant with rehabilitation program. (Tr. 103-105).

- Has a driver's license and is able to drive short distances. (Tr. 205).

- Uses a cane. (Tr. 206).

- Watches television (westerns, auto racing). (Tr. 208).

- Can sit, 1 hours. (Tr. 217).

- Can stand/walk, 10-15 minutes. (Tr. 217).

- Can walk, 200 feet. (Tr. 217).

### III. The Motions for Summary Judgment

A.      Contentions of the Parties

Claimant contends that the ALJ's decision is not supported by substantial evidence. Specifically, Claimant asserts that the ALJ erred: (1) by failing to conduct a proper credibility analysis; and (2) by failing to address the favorable testimony from the VE given in response to Claimant's testimony that he needs to lie down ten (10) minutes every hour, which requires a remand.

Commissioner maintains that the ALJ's decision was supported by substantial evidence. Specifically, Commissioner contends that (1) the ALJ conducted a proper credibility analysis; and (2) Claimant's assertion is unsupported by the evidence.

B. The Standards.

1. Summary Judgment. Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the initial burden of showing the absence of any issues of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). All inferences must be viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). However, "a party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but...must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

2. Judicial Review. Only a final determination of the Commissioner may receive judicial review. See 42 U.S.C. §405(g), (h); Adams v. Heckler, 799 F.2d 131,133 (4th Cir. 1986).

3. Social Security - Medically Determinable Impairment - Burden. Claimant bears the burden of showing that she has a medically determinable impairment that is so severe that it prevents her from engaging in any substantial gainful activity that exists in the national economy. 42 U.S.C. § 423(d)(1), (d)(2)(A); Heckler v. Campbell, 461 U.S. 458, 460 (1983).

4. Social Security - Medically Determinable Impairment. The Social Security Act requires that an impairment, physical or mental, be demonstrated by medically acceptable clinical or laboratory diagnostic techniques. 42 U.S.C. § 423(d)(1), (3); Throckmorton v. U.S. Dep't of Health and Human Servs., 932 F.2d 295, 297 n.1 (4th Cir. 1990); 20 C.F.R. §§ 404.1508, 416.908.

5. Disability Prior to Expiration of Insured Status - Burden. In order to receive disability

insurance benefits, an applicant must establish that she was disabled before the expiration of her insured status. Highland v. Apfel, 149 F.3d 873, 876 (8th Cir. 1998) (citing 42 U.S.C. §§ 416(i), 423(c); Stephens v. Shalala, 46 F.3d 37, 39 (8th Cir.1995)).

6. Social Security - Standard of Review. It is the duty of the ALJ, not the courts, to make findings of fact and to resolve conflicts in the evidence. The scope of review is limited to determining whether the findings of the Secretary are supported by substantial evidence and whether the correct law was applied, not to substitute the court's judgment for that of the Secretary. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

7. Social Security - Scope of Review - Weight Given to Relevant Evidence. The Court must address whether the ALJ has analyzed all of the relevant evidence and sufficiently explained his rationale in crediting certain evidence in conducting the "substantial evidence inquiry." Milburn Colliery Co. v. Hicks, 138 F.3d 524, 528 (4th Cir. 1998). The Court cannot determine if findings are unsupported by substantial evidence unless the Secretary explicitly indicates the weight given to all of the relevant evidence. Gordon v. Schweiker, 725 F.2d 231, 235-36 (4th Cir. 1984).

8. Social Security - Substantial Evidence - Defined. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Substantial evidence consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (citations omitted).

9. Social Security - Sequential Analysis. To determine whether Claimant is disabled, the Secretary must follow the sequential analysis in 20 C.F.R. §§ 404.1520, 416.920, and determine: 1) whether claimant is currently employed, 2) whether she has a severe impairment, 3) whether her impairment meets or equals one listed by the Secretary, 4) whether the claimant can perform her past

work; and 5) whether the claimant is capable of performing any work in the national economy. Once claimant satisfies Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have listed impairments but cannot perform her past work, the burden shifts to the Secretary to show that the claimant can perform some other job. Rhoderick v. Heckler, 737 F.2d 714-15 (7th Cir. 1984).

complete record." Clark v. Shalala, 28 F.3d 828, 830-31 (8th Cir. 1994).

C. Discussion

      1. FAILURE TO CONDUCT A PROPER CREDIBILITY ANALYSIS.

Claimant asserts that the ALJ erred in determining his credibility. Commissioner counters that the ALJ properly determined Claimant's credibility.

Unfortunately for Claimant, his argument is without merit. "Because he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight." Shively v. Heckler, 739 F.2d 987, 889 (4th Cir. 1984) (citing Tyler v. Weinberger, 409 F. Supp. 776 (E.D. Va. 1976)). "Because hearing officers are in the best position to see and hear the witnesses and assess their forthrightness, we afford their credibility determinations special deference." See Nelson v. Apfel, 131 F.3d 1228, 1237 (7th Cir. 1997). The ALJ must apply a two-step analysis when assessing the credibility of a claimant's subjective complaints of pain. First, the ALJ must expressly consider whether the claimant has demonstrated by objective medical evidence an impairment capable of causing the degree and type of pain alleged. Second, once this threshold determination has been made, the ALJ must consider the credibility of her subjective allegations of pain in light of the entire record. Craig v. Chater, 76 F.3d 585 (4th Cir. 1996).

In this case, the ALJ correctly applied the Craig test. The ALJ found that Claimant had "a medically determinable back condition that produces pain and range of motion limitations that are likely to impose significant work-related limitations." (Tr. 17). However, the ALJ found that the objective evidence "is inadequate to support the claimant's subjective complaints of chronic, totally disabling back pain since September 2000). (Tr. 17). This satisfies the first prong of Craig.

The ALJ then considered Claimant's subjective complaints of debilitating symptoms in light of the entire record in accordance with the second prong of Craig. The ALJ was in the best position to observe Claimant at the hearing and evaluate his credibility. Specifically, the ALJ stated that an imaging study of Claimant's lumbosacral spine obtained in May 1997 had indicated partial sacralization of L5, "grade I anterior slippage" of L5 on S1 and early degenerative changes as L3-4. (Tr. 16). Also, it was noted that Claimant's lumbosacral imaging studies obtained in August 2001 and January 2003 revealed no fractures or dislocations and little in the way of significant change since the 1997 imaging study. (Tr. 16). The ALJ noted that as of January 2003, Claimant evidenced only "moderate diffuse disc bulge [at] L3-4 with mild to moderate neuroforaminal encroachment bilaterally. (Tr. 26). Additionally, the ALJ noted that one year after his injury, Claimant's prescribed treatment regimen was "to continue medications and conservative therapy." (Tr. 16). Moreover, it was noted that Claimant's treating orthopedist, Dr. Koay, and independent medical examiner, Dr. Martin, concluded that Claimant had no back condition that warranted surgical intervention. (Tr. 17). Finally, the ALJ noted that Claimant denied any complaints of pain as of September 2002, and as of May 2003, Claimant acknowledged ability to walk well over a mile a day and was accompanying his wife to the

12

grocery sore and on other "shopping expeditions." (Tr. 17).

With respect to Dr. Manchin, the ALJ noted that Dr. Manchin indicated in several instances that Claimant was unable to participate in gainful employment. In this regard, the ALJ found that he "does not accept any purported opinion by Dr. Manchin, to the effect that the claimant was unable to work, as controlling herein." (Tr. 17). The ALJ correctly pointed out that whether an individual is disabled or able to work is an issue reserved for the Commissioner. See SSR 96-5p. Opinions as to disability or ability to work given by a treating source can "never be entitled to controlling weight or given special significance." Id. The ALJ further noted that Dr. Manchin's statements appeared to be predicated on Claimant's subjective complaints. (Tr. 17).

Having considered all the evidence in accordance with the second prong of Craig, the ALJ is in the best position to determine Claimant's credibility. Although the ALJ determined that Claimant had medically demonstrable severe impairments, the ALJ also determined that Claimant's testimony was not fully credible and inconsistent with his medical record. (Tr. 14).[5]

Accordingly, the standards set in Craig have been met, and the ALJ did not err in evaluating Claimant's credibility.

2. THE ALJ'S FAILURE TO ADDRESS THE FAVORABLE TESTIMONY FROM THE VOCATIONAL EXPERT REQUIRES A REMAND.

Claimant also contends that the ALJ's failure to address the favorable testimony from the Vocational Expert given in response to Claimant's assertions that he needs to lie down for ten

---

[5] The ALJ also stated that "[i]n limiting the claimant to performing no more than sedentary exertional work, the Administrative Law Judge has accorded the maximum benefit of the doubt herein with regard to the claimant's subjective pain complaints." (Tr. 17).

(10) minutes every hour requires a remand. The Commissioner counters that Claimant's assertion is unsupported by the evidence.

This Court's review of a denial of SSI benefits is limited to whether substantial evidence supports the Commissioner's decision and whether the correct legal standard was applied. Pass v. Chater, 65 F.3d 1200, 1202 (4th Cir. 1995). In reviewing an administrative record for substantial evidence, it is inappropriate to reweigh the evidence, resolve conflicts, decide questions of credibility, or supplant the Commissioner's judgment. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). The ALJ must accompany his decision with sufficient explanation to allow a reviewing court to determine whether the Commissioner's decision is supported by substantial evidence. Cook v. Heckler, 783 F.2d 1168, 1172 (4th Cir. 1986); Hammond v. Heckler, 765 F.2d 424, 426 (4th Cir. 1985).

Although the ALJ is required to indicate the weight given to all relevant evidence, Gordon v. Schweiker, 725 F.2d 231 (4th Cir. 1984), the Fourth Circuit does not require that the ALJ discuss every piece of evidence.[6] It has been repeatedly recognized that the ALJ's "duty of explanation is not intended to be a mandate for administrative verbosity or pedantry. If a reviewing court can discern 'what the ALJ did and why he did it,' the duty of explanation is satisfied." Piney Mountain Coal Co. v. Mays, 176 F.3d 753, 762 n. 10 (4th Cir. 1999) (citing

---

[6] The Undersigned notes that the Seventh Circuit has held that a written evaluation of every piece of evidence is not required, as long as the ALJ articulates at some minimum level her analysis of a particular line of evidence. See Green v. Shalala, 51 F.3d 96, 101 (7th Cir.1995). Also, the Eighth Circuit has held that the ALJ's mere failure to cite specific evidence does not establish that the ALJ failed to consider it. Black v. Apfel, 143 F.3d 383, 386 (8th Cir.1998). See also, Walker v. Secretary of Health and Human Services, 884 F.2d 241, 245 (6th Cir.1989)(reviewing court many examine all the evidence, even if it has not been cited in the Secretary's decision).

Lane Hollow Coal Co. v. Director, OWCP, 137 F.3d 799, 804-805 (4th Cir. 1998)). Therefore, this Court must examine the record to determine whether there is substantial evidence for the ALJ's decision.

At the administrative hearing, Claimant testified that he needed to lie down for ten minutes every hour. (Tr. 209-210). The ALJ asked the vocational expert several hypotheticals, one of which included the need to lie down during the day. (Tr. 222). The vocational expert responded by stating that this impairment would eliminate the prospect of employment. (Tr. 222). The ALJ, however, discounted the credibility of the Claimant's subjective complaints in light of the entire record and properly found Claimant capable of performing a range of sedentary work with the option to either sit or stand, which requires no squatting or climbing of ladders, ropes or scaffolds. See also Edward v. Bowen, 672 F. Supp. 230 (E.D.N.C. 1987) (citing Gallant v. Heckler, 753 F.2d 1450 (9th Cir. 1984))(where assumptions in a hypothetical to a vocational expert are not supported by the record, the expert's opinion has no evidentiary value).

As was stated above, because the Court will not re-weigh or reappraise that evidence, the ALJ was free to find facts concerning Claimant's impairments. The ALJ's findings were based on the ALJ's comprehensive review of the objective medical evidence, functional assessment of consulting and treating physicians and Claimant's account of his daily activities. As was stated above, the ALJ properly evaluated Claimant's credibility. Thus, because the ALJ is not required to discuss every piece of evidence and because there is substantial evidence in the record to support the ALJ's findings, the facts of this case do not warrant a remand.

## IV. Recommendation

For the foregoing reasons, I recommend that Claimant's Motion for Summary Judgment be DENIED and that the Commissioner's Motion for Summary Judgment be GRANTED because the ALJ was substantially justified in his decision. Specifically, the ALJ (1) conducted a proper credibility analysis; and (2) was not required to discuss every piece of evidence.

Any party who appears *pro se* and any counsel of record, as applicable, may, within ten (10) days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection. A copy of such objections should be submitted to the District Court Judge of Record. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation.

The Clerk of the Court is directed to provide a copy of this Report and Recommendation to parties who appear *pro se* and all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic case Filing in the Unites States District Court for the Norther District of West Virginia.

DATED: April 26, 2006

/s/ James E. Seibert
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE